# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

V

DARMARROE DONTAE TUNSTALL,

      Defendant-Appellant.

UNPUBLISHED
November 20, 2014

No. 316886
Berrien Circuit Court
LC Nos. 2012-002917-FH;
            2012-002784-FH

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right from his multiple convictions after a jury trial. We affirm defendant's convictions, but remand for further proceedings consistent with this opinion.

In lower court case number 2012-002917-FH, defendant was convicted of one count of conducting a criminal enterprise, MCL 750.159g, one count of using a computer to commit a crime, MCL 752.796, and four counts of uttering and publishing, MCL 750.249. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to respective concurrent terms of 210 to 320 months, 14 to 240 months, and 12 to 240 months. In lower court case number 2012-002784-FH, defendant was convicted of possession with intent to deliver marijuana, MCL 333.7401(2)(d)(3)(2), and sentenced as a fourth-offense habitual offender to 14 to 180 months. All of defendant's sentences were to be served concurrently, but consecutive to an underlying parole term.

At trial, the prosecution presented evidence that defendant directed a check-cashing scheme in which he created counterfeit payroll checks from various fictitious entities and arranged to have them cashed by other individuals who were paid with a portion of the proceeds. All of the other participants but one were eventually arrested and charged with uttering and publishing for their respective roles in the scheme, and each reached an agreement to plead guilty to the reduced charge of attempted uttering and publishing in exchange for their testimony against defendant.

Defendant first argues that his trial counsel was ineffective for informing the jury that he was on parole at the time of the offenses charged in the instant case.[1]

The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions. US Const Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039, 80 L Ed 2d 657 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Id.*

Defense counsel cross-examined Berrien County Sheriff's Department South County Commander Rick Biggart and, referencing Biggart's direct examination testimony,[2] said, "I believe you said you had spoke to, his parole—or, to a parole—somebody about an address?" Defense counsel thereafter immediately stated "[h]old on a second. I'm sorry I didn't mean it that way." Defense counsel then continued questioning Biggart about defendant's potential address. He later asked, "That address is what?" Biggart provided the nonresponsive answer that "[defendant] . . . is paroled at an address at 9428 Sebring Drive in Portage, Michigan," and said that his driver's license listed his address as "688 South Fair."[3]

Defense counsel had a strategic reason for trying to elicit evidence from which he could argue that defendant did not live at 521 Westchester, the address where incriminating evidence was found. Consistent with this strategy, defense counsel obtained from Biggart two additional addresses where defendant legitimately and verifiably could have resided: 9428 Sebring Drive in Portage, Michigan; and 688 South Fair. Defendant's status as a parolee, however, was irrelevant to his guilt or innocence in the instant case and to defense counsel's strategy in trying to prove that defendant did not reside at 521 Winchester. *People v DeBlauwe*, 60 Mich App 103, 105; 230 NW2d 328 (1975). Therefore, we conclude that defense counsel's performance in mentioning defendant's status as a parolee fell below objective standards of reasonableness.

---

[1] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

[2] Defendant does not challenge Biggart's direct examination testimony, which was nonresponsive to a prosecution question and informed the jury that there was contact with a "parole agent."

[3] Defense counsel did not object, and defendant only appears to argue on appeal that counsel improperly put the parole information before the jury. Defense counsel was not responsible for Biggart's nonresponsive answer, and we note that defense counsel's failure to object was not objectively unreasonable. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1999) (it may be strategic not to object and draw attention to prejudicial information).

However, reversal is not required because defendant has failed to establish that, but for counsel's error, there is a reasonable probability that the outcome of the proceedings would have been different. The record indicates that the jury was presented with direct and overwhelming evidence of defendant's guilt on each of the charges. Six participants in defendant's check-cashing scheme testified as to defendant's planning and leadership of the scheme. They described how the scheme worked, including defendant's use of their names, addresses, and social security numbers to create fictitious payroll checks from employers with whom they had not been employed. They testified that defendant personally transported them to various business locations to cash the checks and then paid them a small percentage, retaining the balance for himself and his partner. In addition to the corroborated accounts of the direct participants, the jury also heard testimony of incriminating statements made by defendant in which he admitted that he drove the other participants to the check-cashing sites and that his computer was used in accomplishing the crimes.

In order to prove a violation of Michigan's criminal enterprise statute, the prosecution must prove beyond a reasonable doubt that the defendant was employed by, or associated with, an enterprise and knowingly conducted or participated in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity. *People v Martin*, 271 Mich App 280, 289-290; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). MCL 752.796(1) provides that the statute's subject is the use of a computer to commit a crime and its purpose is to criminalize such use. *People v Loper*, 299 Mich App 451; 830 NW2d 836 (2013). The three elements of uttering and publishing, MCL 750.249, are "(1) knowledge on the part of the defendant that the instrument was false; (2) an intent to defraud; and (3) presentation of the forged instrument for payment." *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).

We conclude that there was overwhelming evidence to prove that defendant was directly "employed by, or associated with" the affairs of a criminal enterprise and "knowingly participated" in its affairs, satisfying the racketeering charge. *Martin*, 271 Mich App at 289-290. That evidence also demonstrated that he used a computer to do so. *Loper*, 299 Mich App at 466. Defendant's guilt of the uttering and publishing counts is similarly satisfied by the testimony of the six participants and defendant's inculpatory statements. *Hawkins*, 245 Mich App at 457.

Turning to the intent to deliver marijuana charge, the record reveals that when the police executed the search warrant at 521 Winchester, they discovered a quantity of packaged marijuana, currency, a digital scale, and a box of plastic sandwich baggies. An officer testified to the discovery of these items and that they indicated that the marijuana had been prepared for distribution. Officers also found evidence of defendant living at the Winchester apartment, including an invoice for cable television service in his name and a Western Union receipt bearing the name "Rio Thunstall"[4] [sic], and the address of "521 Winchester, St. Joseph, Michigan 49085" in the sender portion of the receipt. This evidence was sufficient to support the jury's guilty verdict on defendant's possession with intent to deliver marijuana charge. *People v Williams*, 268 Mich App 416, 419-420; 707 NW2d 624 (2005).

---

[4] There was testimony from multiple witnesses that defendant went by the nickname "Rio."

Accordingly, we conclude that defendant cannot show that there is a reasonable probability that the outcome of his trial would have been different had defense counsel not mentioned defendant's parole status and, therefore, defendant is not entitled to relief on the basis of ineffective assistance of counsel.

Defendant next argues that the trial court incorrectly scored offense variables (OVs) 9 and 12 because its decisions were based on speculation.[5]

In scoring OV 9, a trial court must assess 25 points if "there were . . . twenty or more victims who were placed in danger of property loss." MCL 777.39(1)(b); *People v Morson*, 471 Mich 248, 261; 685 NW2d 203 (2004). Because OV 9 speaks to persons or entities "placed *in danger* of property loss," the trial court properly counted all the stores at which the checks were presented even though some of those stores declined to cash them. 22 individual stores were listed by the prosecutor at sentencing, consistent with the evidence presented at trial. Accordingly, the trial court did not err by scoring OV 9 at 25 points.

Under OV 12, a trial court must assess points for the circumstance where "three or more contemporaneous felonious criminal acts involving other crimes were committed." *People v Bemer*, 286 Mich App 26, 32; 777 NW2d 464 (2009). A felonious criminal act is contemporaneous if the act occurred within 24 hours of the sentencing offense and it has not and will not result in a separate conviction. MCL 777.42(2)(a); *People v Light*, 290 Mich App 717, 722; 803 NW2d 720 (2010).

In defendant's presentence investigation report, the Michigan Department of Corrections originally scored OV 12 at zero. At sentencing, the prosecutor argued that 10 points should be scored because three of the low-level participants "all indicated that they went out three days in a row and cashed four checks each day . . . . They weren't convicted of all those other Uttering and Publishings . . . and those would certainly be within 24 hours of the RICO charge, as well as the Use of a Computer charge." Defense counsel argued that "[a]t this point, we don't know if those other jurisdictions will be charging these . . . . The statute specifically says, 'has not, and will not result in a separate conviction.' We don't know that at this time." The trial court concluded that "I'm gonna grant [the prosecutor's] request on OV 12, to modify it from a 0 to a 10." Although the trial court did not make definitive findings about when the other crimes it scored under OV 12 occurred, it accepted and adopted the prosecutor's argument that the crimes were "concurrent," and thus within the 24 hour period of time mandated by MCL 777.42(2)(c) and *Light*, 290 Mich App at 722. The record showed that the criminal activity of defendant and the various coconspirators took place over a period of days or weeks during April and May, 2012. Because the using a computer to commit a crime, MCL 750.796, and the conducting a criminal enterprise, MCL 750.159g, charges were part and parcel of every fraudulent check

---

[5] "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

created and subsequently cashed, a preponderance of the evidence in the record shows that these crimes were necessarily "contemporaneous" as required for scoring under OV 12. However, the record does not support, by a preponderance of the evidence, that the other contemporaneous criminal acts "ha[ve] not and will not result in a separate conviction." On remand, the trial court must reconsider the scoring of OV 12 in light of this statutory requirement.

As calculated by the trial court, defendant's minimum sentencing guidelines range was 99 to 320 months. If, on remand, the trial court does not find that a preponderance of the evidence supports the scoring of OV 12 at 10 points, defendant's minimum guidelines range would be reduced to 87 to 290 months. See MCL 777.63. A defendant is entitled to resentencing on the basis of a scoring error if the error changes the recommended minimum sentence range under the legislative guidelines. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

We affirm defendant's convictions but remand to the trial court for further consideration of the scoring of OV 12 and resentencing if necessary, consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro